Filed 1/21/21  Gould v. Ocwen Loan Servicing, LLC CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATRICIA A. GOULD, | B303876 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. |
| v. | No. 18BBCV00133) |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Reversed with directions.

Law Office of John V. Gaule and John V. Gaule for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendant and Respondent.

———————————

Patricia A. Gould appeals from a judgment entered after the trial court sustained Ocwen Loan Servicing, LLC's (hereafter Ocwen) demurrer to her first amended complaint without leave to amend. We reverse with instructions.

**BACKGROUND**

I.    The foreclosure

Because this appeal comes to us after the trial court sustained a demurrer without leave to amend, we recite the facts as alleged in the first amended complaint and those matters of which judicial notice has been taken.

Patricia Gould[1] obtained a loan secured by a deed of trust encumbering her home.  Ocwen serviced Patricia's loan.

In March 2016, Patricia defaulted on her loan payments and the trustee recorded a notice of default.[2]  To avoid foreclosure, John contacted Ocwen, who told him that Patricia should be able to qualify for a trial loan program without submitting any loan documents if she sent a certified check for two monthly payments. Patricia sent Ocwen a certified check but two weeks later, Patricia was reimbursed for the same amount.  Ocwen said it was too late to enter the trial loan program and that Patricia would need to submit a full loan modification application.  Patricia submitted the full loan application along with three current paystubs and a utility bill.

---

[1] The original complaint also named John Gould as a plaintiff and the first amended complaint alleged that he witnessed various events.  We refer to John Gould and Patricia Gould by their first names, meaning no disrespect.

[2] Western Progressive, LLC was the trustee under the deed of trust.

A few weeks later, Ocwen rejected the loan application because of a discrepancy in the paystubs. Patricia explained the discrepancy and then emailed additional copies of her paystubs as well as a letter stating her financial hardship. Ocwen informed Patricia that if her loan application was not approved, she could pay half of the amount due, approximately $30,000, and the rest could be paid off over two years on top of the existing loan payment. Patricia did not have that amount, so this option was unavailable.

As a foreclosure sale in July 2016 was approaching, John contacted Ocwen again. Ocwen stated that if the loan application were in process, the sale date would be postponed, but that any payments toward the mortgage would have to be the total amount in arrears. This option was also unavailable to Patricia. The trustee recorded a notice of trustee's sale in September 2016 after Patricia did not cure the default.

Another foreclosure sale date was scheduled in late December 2016. When John contacted Ocwen again, it informed him that Patricia's loan application was out-of-date, and that she needed to submit a new loan application with current paystubs. Patricia sent the new loan application along with her current paystubs and utility bill. The foreclosure date was postponed until February 8, 2017. On February 7, 2017, John called Ocwen and spoke with a representative, who stated the foreclosure sale date was February 9, 2017 and reiterated that, if the loan application were current and in process, the sale date would be postponed. Ocwen also stated that it needed additional paystubs to keep Patricia's account current. Patricia sent her latest paystub and, later that day, John spoke with another Ocwen representative who reiterated that the foreclosure sale date was February 9, 2017 and that as long

3

as the loan application was current, the sale date would be postponed.

The next day, on February 8, 2017, the trustee sold the property at a foreclosure sale.[3] The purchaser filed an unlawful detainer complaint against Patricia and obtained a default judgment against her in March 2017. Patricia discovered her house had been sold when law enforcement came to the house and evicted her in April 2017.

## II. Patricia sues Ocwen

The Goulds sued Ocwen for illegally foreclosing on Patricia's home, alleging causes of action for breach of contract, breach of fiduciary duty, negligence, and fraud.[4] Ocwen demurred on the basis that John was not a real party in interest because he was not a party to the loan and that the complaint failed to allege sufficient facts to state a cause of action. The trial court sustained the demurrer, finding that the Goulds' breach of contract cause of action did not allege a clear agreement between the parties and that any alleged oral agreement was unenforceable under the statute of frauds. The trial court also found that the Goulds failed to allege a fiduciary relationship or that Ocwen owed the Goulds a duty of care in handling the loan modification process. With respect to the fraud

---

[3] Third party LJK Investment LLC purchased the property at the foreclosure sale.

[4] In her initial pleading, Patricia named Ocwen, Ocwen Financial Corporation; and Ocwen Mortgage Servicing, LLC as defendants. Patricia voluntarily dismissed Ocwen Financial Corporation and Ocwen Mortgage Servicing, LLC, leaving Ocwen as the only defendant in her first amended complaint.

4

allegation, the trial court found that it was not pled with sufficient specificity.

Patricia filed a first amended complaint alleging causes of action for unfair and deceptive trade practices under the Consumer Financial Protection Act of 2010 (12 U.S.C. § 5481 et seq.), breach of fiduciary duty, constructive fraud, breach of implied-in-fact contract, and negligence. The first amended complaint omitted John as a plaintiff, but otherwise, the factual allegations were nearly identical to those in the original complaint. Ocwen demurred again.[5] Patricia filed a five-page opposition that did not address the merits of the demurrer. The trial court sustained the demurrer without leave to amend.

## DISCUSSION

Patricia argues that the trial court abused its discretion in denying her leave to amend her first amended complaint. In her opening brief, Patricia does not identify how the trial court abused its discretion or any potential amendments that could save her complaint. In her reply, however, she asserts for the first time that she can amend her complaint to state causes of action for negligence, misrepresentation, and violation of the California Homeowner's Bill of Rights (HBOR) (Civ. Code, §§ 2923.6, 2924.11, 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20).

We independently review the sustaining of a demurrer and whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of*

---

[5] Another entity that merged with Ocwen, PPH Mortgage Corporation, filed the subject demurer although Ocwen remains the only named defendant in the action.

*Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1082.) The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. (*Ibid.*) The plaintiff can make that showing for the first time on appeal. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

As an initial matter, we note that Patricia's counsel failed to address the merits of Ocwen's demurrers in the opening brief and only identified potential causes of action in the reply.[6] Although our review of an order sustaining a demurrer without leave to amend is de novo, our review is limited to issues which have been adequately raised in an appellant's briefs. (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155.)

---

[6] Patricia's counsel has exhibited a similar pattern of failing to address the merits of Ocwen's demurrers throughout this litigation. He did not file an opposition to Ocwen's first demurrer and then failed to address the merits of the second demurrer in the short opposition that was filed below.

When a demurrer is sustained without leave to amend and appellant fails to address specific causes of action, those causes of action are deemed abandoned. (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 9, fn. 2.) We therefore find that Patricia has abandoned her unfair and deceptive trade practices, breach of fiduciary duty, constructive fraud, and breach of implied-in-fact contract causes of action. Accordingly, we address the remaining causes of action for negligence, misrepresentation, and violation of the HBOR that Patricia identified in her reply.

Although Patricia's complaint and briefs are poorly drafted, we conclude that she may be able to amend her complaint to state causes of action. The gist of Patricia's complaint is that Ocwen negligently processed Patricia's loan modification application and misrepresented that the foreclosure sale date would be postponed so long as the loan modification application was being processed, causing the foreclosure of her home and eviction.

With respect to her negligence claim, Patricia alleges that Ocwen had a duty to process Patricia's loan modification requests in a competent and timely fashion and that Ocwen breached that duty by repeatedly providing her with information that was incorrect, untimely, resulting in foreclosure of her property without any notice to her. We disagree.

Generally, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095–1096.) A "loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th

7

49, 67.) Nothing in Patricia's complaint or briefing suggests that she can allege that Ocwen's involvement in processing her loan modification application went beyond its conventional role as a loan servicer, creating a general duty of care. Thus, her general negligence claim fails.

However, while a lender does not owe a general duty of care in processing a loan modification application, it does owe the borrower a duty to not make "material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." (*Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 68.) The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231.) The elements of a claim for negligent misrepresentation are nearly identical, except that instead of knowledge of the misrepresentation's falsity, a plaintiff need only show the absence of reasonable grounds for believing the misrepresentation to be true. (*Bock v. Hansen* (2014) 225 Cal.App.4th 215, 231.) Causes of action for misrepresentation sound in fraud and each element must be pled with specificity. (*Chapman*, at p. 231.) "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and

when the representation was made." (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793.)

Here, Patricia could potentially allege a misrepresentation based on Ocwen's reassurances that so long as Patricia's loan application were in process, the foreclosure sale would be postponed. While Patricia's complaint only identifies one Ocwen representative by name, she can potentially amend her pleading to include the names of those representatives to whom John spoke during the processing of her application. Further, Patricia also alleged that Ocwen representatives misled her that the February 8, 2017 foreclosure date had been postponed and that no foreclosure date had been scheduled. It is also apparent that Patricia relied on Ocwen's statements that the foreclosure sale date would be postponed so long as her loan modification application were in process as she did not pursue any other remedies to avoid foreclosure. Liberally construing the allegations in favor of Patricia, we conclude that she may be able to state causes of action for intentional or negligent misrepresentation against Ocwen and should be granted leave to assert those claims.

We also conclude that Patricia may be able to amend her complaint to allege a violation of the HBOR's prohibition against dual tracking. The HBOR was enacted "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (Civ. Code, § 2923.4.) The HBOR prohibits dual tracking, whereby financial institutions continue to pursue foreclosure while evaluating a borrower's loan modification application. (Civ. Code, §§ 2923.6, 2924.18.) If a financial

9

institution engages in this practice, the borrower may pursue an action for damages and obtain attorney fees and costs. (Civ. Code, § 2924.12, subds. (b), (i); *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)

Here, Patricia has alleged that she pursued a loan modification with Ocwen and submitted documentation while remaining in contact with Ocwen representatives. Nonetheless, her home was foreclosed upon and sold while Ocwen purportedly was considering her application. These allegations support the conclusion that Patricia may be able to amend her complaint to allege a violation of the HBOR.

## DISPOSITION

The judgment is reversed. The trial court is directed to (1) vacate its order sustaining Ocwen Loan Servicing, LLC's demurrer without leave to amend and (2) enter a new order allowing Patricia Gould to file a second amended complaint to allege causes of action for intentional and negligent misrepresentation and violation of the Homeowner's Bill of Rights. The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


LAVIN, Acting P. J.        EGERTON, J.