Filed 6/29/22  Khurana v. CitiMortgage CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANITA KHURANA et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CITIMORTGAGE, INC., <br><br>     Defendant and Respondent. | A161003 <br><br> (Contra Costa County <br> Super. Ct. No. C17-00101) |

In January 2017, Anita and Mahesh Khurana (the Khuranas) sued CitiMortgage, Inc. (Citi) for failing to appoint an adequate single point of contact to handle their request for a modification of their home loan.  The Khuranas sought damages and an injunction preventing non-judicial foreclosure pursuant to causes of action for negligence, unfair business practices and violations of the Homeowner Bill of Rights, commonly referred to as the HBOR.  (Civ. Code, §§ 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20; references to an undesignated statute are to the Civil Code.)  Almost three years later, in December 2019, the Khuranas sought leave to file an amended complaint in order to allege a new claim for fraud.  The trial court denied the Khuranas leave to amend and granted Citi summary judgment.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Undisputed Facts Pertaining to The Khuranas' Loan

In October 2006, the Khuranas obtained a $1,080,000 loan from Argent Mortgage Company, which was evidenced by a promissory note and secured by a deed of trust encumbering the Khuranas' property in San Ramon (the property). Citi became the mortgage servicer for the Khuranas' loan in 2008 and continued in that role while the beneficial interest in the loan was assigned several times. In January 2009, the Khuranas were granted a loan modification, but they failed to make their modified loan payments after May 2009.

In May 2015, a notice of default was recorded against the property, which stated that the Khuranas' loan was in arrears in the amount of $546,287.94. At the time, the beneficiary of the deed of trust was U.S. Bank National Association as trustee for Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through certificates, Series 2007-AMC2 (Citigroup).

In September 2015, the Khuranas filed a voluntary petition for Chapter 13 bankruptcy. With the assistance of counsel, they obtained relief from the automatic bankruptcy stay and applied to Citi for another loan modification. Citi denied that request in a letter dated April 26, 2016. The letter outlines why the Khuranas did not qualify for the "Citi Supplemental Modification Program" or the "Governments Home Affordable Modification Program," and notified them of their right to appeal within 30 days. Citi encouraged the Khuranas to call Citi to discuss their options and secure assistance. In October 2016, the bankruptcy court approved the Khuranas' Chapter 13 Plan, which proposed surrendering their property to allow Citigroup and two other secured creditors to exercise their rights against it as collateral.

In November 2016, Citigroup's agent issued a notice of trustee's sale, which stated that the total unpaid balance due on the Khuranas' loan was $1,699,516.85, and that a sale of the property was scheduled for January 4, 2017. This notice was recorded on November 30, 2016.

On December 23, 2016, Anita Khurana sent an email to Citi requesting another loan modification. Citi employee John Blume sent an email response that day, which included a list of documents the Khuranas were required to submit to complete an application. Blume stated that unless the Khuranas' "hardship" circumstances had changed, the outcome of another review would be the same as the review that Citi completed in April. Blume also stated that time was of the essence and the necessary documents had to be uploaded and verified at least seven days before the pending foreclosure sale.

On the afternoon of December 28, 2016, the Khuranas sent an email to Citi, which attached documents the Khuranas submitted to support their request for a loan modification. That day, Blume had two telephone conversations with Anita Khurana. During the first conversation, Blume confirmed receipt of the Khuranas' documents and Anita stated that she expected her income to increase in January. During the second conversation, Blume advised Anita of additional information or corrections to the documents that would need to be submitted by the Khuranas before a review of their application could be completed. On December 30, Citi employee Heather Smith called Anita Khurana and notified her that Citi was "unable" to postpone the foreclosure sale because all documents required for a loan modification review had not yet been submitted.

On January 4, 2017, Anita Khurana filed a voluntary petition for Chapter 7 bankruptcy. Anita completed the petition without an attorney and filed it for the purpose of delaying a foreclosure sale. The trustee's sale

3

scheduled for January 4, 2017, did not take place. As best we can determine from the record, the Khuranas have not cured the default of their loan and they continue to reside at the property.

## II. The Present Action

### A. The Complaint

On January 11, 2017, the Khuranas filed a complaint against Citi, which alleges the following facts: In August 2016, the Khuranas informed their account representative at Citi, John Blume, that they wanted to "apply for a foreclosure prevention alternative," and that "they would be experiencing increased income which they'd like considered as part of a loss mitigation application." In December, the Khuranas had not received an application to fill out, so they contacted Blume again, who advised them that their application materials had to be submitted and uploaded no later than December 28.

The Khuranas alleged that they "diligently obtained all applicable items" and emailed them to Citi on the afternoon of December 28, 2016. Later that day, Blume confirmed receipt of the application but also informed the Khuranas that because the application was not received on December 27, the foreclosure sale would not be postponed. During the call, Blume reviewed the Khuranas' "submission" with them and "[m]ost everything was correct," although they needed to make "very minimal amendments." Then Blume informed the Khuranas that he was leaving the office and would not look at their materials. Nevertheless, the Khuranas corrected errors in their documents and submitted them to Citi. They received emails from Citi on December 30, 2016, and January 3, 2017, which "indicated" that the material they had submitted was being reviewed. On January 3, they called and emailed Blume but were unable to reach him. As the sale was not postponed,

4

Anita Khurana "was forced to file bankruptcy to ensure her property was not lost to foreclosure."

Purporting to state five distinct causes of action, the Khuranas alleged that Citi: (1) violated the HBOR by failing to provide a single point of contact to coordinate the Khuranas' documents and assess them for a foreclosure prevention alternative (§ 2923.7, subds. (b)(1)–(2)); (2) violated the HBOR by failing to provide a single point of contact with the ability and authority to stop foreclosure proceedings (§ 2923.7, subd. (b)(5)); (3) committed negligence per se by failing to provide an adequate single point of contact as required by the HBOR (§ 2923.7); (4) committed negligence per se by failing to maintain policies and procedures reasonably designed to assist delinquent borrowers and provide them with accurate information as required by 12 C.F.R. part 1024.40, a regulation promulgated under the Real Estate Settlement Procedures Act (RESPA); and (5) violated the Unfair Competition Law by violating the HBOR and RESPA (Bus. & Prof. Code, § 17200, et seq.).[1]

## B. Pertinent Trial Court Proceedings

During the discovery phase of this action, Citi made two overtures about potentially modifying the Khuranas' loan. On May 10, 2018, Citi's counsel sent an email to the Khuranas' counsel providing directions for applying for a loan modification. Another email to counsel dated October 19, 2018, attached forms and provided additional information about documentation that needed to be submitted to complete a loan modification

---

[1] The copy of the complaint that appears in the appellate record is incomplete, providing us with only a partial description of the fourth cause of action for negligence per se predicated on the RESPA, and no description of the cause of action alleging a violation of Business & Professions Code section 17200. For our purposes, the trial court's order granting Citi summary judgment contains an adequate description of the fourth and fifth causes of action.

application. The Khuranas did not submit completed forms or any documents in response to these offers.

In August 2019, Citi filed a motion for summary judgment on the grounds that there is no disputed issue of material fact in this case, each cause of action alleged in the Khuranas' complaint is without merit, and Citi is entitled to judgment as a matter of law. The Khuranas filed their opposition on November 21, and Citi filed its reply brief on November 27. These filings were extensive, consuming several hundred pages of evidence and argument.

On December 2, 2019, the Khuranas filed a motion for leave to file a first amended complaint. The Khuranas proposed to allege additional causes of action for fraud and a violation of RESPA. They also sought permission to allege new facts, "such as that [Citi] attempted to foreclose on [the Khuranas'] property while [the Khuranas'] were in bankruptcy." The Khuranas argued that Citi would not suffer prejudice since the amended complaint "would merely clarify allegations made in the original complaint and address wrongdoing" that Citi admitted in its summary judgment motion.

Pursuant to the parties' stipulation, the court agreed to hear the pending motions for summary judgment and leave to file an amended complaint on December 19, 2019. On December 18, the court issued tentative rulings and, as neither ruling was contested, the court adopted them as orders. With respect to the summary judgment motion, the court adopted its tentative ruling to continue the matter, with instructions that the parties submit supplemental briefing addressing the causes of action alleging violations of the HBOR. With respect to the Khuranas' motion for leave to file an amended complaint, the court denied it "on two fully independent

6

grounds." First, the motion was untimely and prejudicial, as it was filed without reasonable justification two weeks before the originally set trial date, and second, the causes of action the Khuranas proposed to add lacked substantive merit, the court found.

The summary judgment hearing was continued to February 20, 2020. At the conclusion of the hearing, the court adopted its tentative ruling granting Citi's motion. Findings were memorialized in an order filed on June 16, 2020, along with a judgment dismissing the action with prejudice.

The court granted summary judgment as to the first two causes of action alleging HBOR violations based on undisputed evidence that after the Khuranas filed the present action, Citi afforded them another opportunity to file a loan modification application and they failed to submit the required paperwork. The court found that this evidence shows that the alleged HBOR violations were cured or were no longer material, thus relieving the servicer of potential liability. (Citing § 2924.12, subd. (c).)

The court also found that the HBOR claims are barred by waiver or estoppel, based on evidence of a fact pattern indicating that the Khuranas are "simply drawing this litigation out so that they may stay in their home indefinitely without making payments." (Citing *Gillies v. JPMorgan Chase Bank, N.*A. (2017) 7 Cal.App.5th 907, 909 [characterizing a delinquent borrower's " 'gaming [of] the system' " as an "egregious abuse"].) As support for this conclusion, the court found, among other things, that (1) the Khuranas' December 2016 submission did not include all the documents that Blume requested from the Khuranas in his December 23, 2016 email, (2) after this action was filed, the Khuranas refused to submit an updated application despite two offers from Citi to consider such an application, and (3) the Khuranas failed to dispute, on summary judgment, that their

7

financial circumstances had not changed when they applied for another loan modification in December 2016.

The court granted summary judgment as to the third and fourth causes of action for negligence per se, based on findings that (1) Citi did not owe the Khuranas a duty of care in the foreclosure proceedings, and (2) a negligence theory could not be used to make an " 'end run' " around HBOR's safe harbor provision, which allows lenders to avoid liability by curing violations prior to foreclosure. (§ 2924.12, subd. (c).) The cause of action alleging negligence based on the RESPA failed for the additional reason that the Khuranas predicated their claim on a violation of 12 C.F.R. part 1024.40, which—unlike some other RESPA regulations—does not give rise to a private right of action. (Citing *Moody v. PennyMac Loan Services, LLC* (D.N.H. March 27, 2018) 2018 U.S.Dist. Lexis 55322, *26–*27 (*Moody*).) Finally, the court found that the fifth cause of action for violating the unfair competition law failed because it was derivative of other claims as to which summary judgment was granted.

## DISCUSSION

### I. The Grant of Summary Judgment

We begin with the Khuranas' claim that the judgment must be reversed because Citi is not entitled to summary adjudication of any cause of action alleged in the complaint. Summary judgment may be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Our standard of review is de novo. (*Ong v. Fire Ins. Exchange* (2015) 235 Cal.App.4th 901, 906.)

8

## A. The HBOR Claims

In their complaint, the Khuranas allege that Citi violated the HBOR by appointing Blume as its single point of contact because he (1) failed to properly evaluate their loan modification application, and (2) lacked the ability and/or authority to "stop foreclosure proceedings when necessary." On appeal, the Khuranas contend there is a material factual dispute as to whether Citi is liable for these alleged violations. We disagree.

### 1. Statutory Overview

The HBOR "was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' (§ 2923.4, subd. (a).)" (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272; see also *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1114–1115 (*Schmidt*).)

"Among other things, the HBOR requires mortgage servicers to contact (or diligently attempt to contact) the borrower in person or by phone before recording a notice of default, in order to assess the borrower's financial situation and explore options to prevent foreclosure. (§ 2923.55, subds. (a), (b)(2) & (f).) . . . . If a borrower requests a foreclosure-prevention alternative, the servicer must promptly establish a single point of contact and provide the borrower a direct means of communication with that point of contact. (§ 2923.7, subd. (a).) The HBOR also prohibits mortgage servicers from proceeding to the next step in the foreclosure process while a borrower's complete application for a loan modification is pending (§ 2923.6, subds. (c) & (e)), a practice commonly known as ' "dual tracking." ' " (*Billesbach v.*

9

*Specialized Loan Servicing LLC* (2021) 63 Cal.App.5th 830, 844–845
(*Billesbach*).)

However, when the borrower has submitted multiple loan modification applications, the mortgagee's obligation to re-evaluate a new application is different. In this situation, section 2923.6, subdivision (g) states: "In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."

The " 'HBOR provides for injunctive relief for statutory violations that occur prior to foreclosure [citation], and monetary damages when the borrower seeks relief for violations after the foreclosure sale has occurred.' " (*Schmidt, supra,* 28 Cal.App.5th at p. 1115; see § 2924.12, subds. (a) & (b).) Importantly, it also contains a safe harbor provision to encourage the curing of violations. (*Schmidt,* at p. 1115; *Billesbach, supra*, 63 Cal.App.5th at p. 845.) Under section 2924.12, subdivision (c), "a mortgage servicer . . . shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale."

### 2. Analysis

The Khuranas' primary contention is that summary adjudication of the HBOR claims is precluded because of an unresolved factual dispute regarding

whether the December 2016 loan modification application was complete. They argue further that there are other "serious" factual disputes, such as whether or not their financial situation improved after their previous request for a loan modification was denied. Citi counters that the Khuranas produced no actual evidence to raise a triable issue as to these material facts. Citi also contends that even if there is evidence to support the alleged HBOR violations, the trial court correctly determined that the safe harbor provision applies. We limit our discussion to this last point, which is dispositive.[2]

The HBOR violations alleged in the Khuranas' complaint are limited to the period between December 2016 and January 2017. Even if the alleged violations occurred, undisputed evidence establishes that Citi is not liable for them. First, there is no dispute that a foreclosure sale has not been held, which means that the Khuranas' potential remedy is limited to "injunctive relief to enjoin a material violation" of section 2923.7 (§ 2924.12, subd. (a)(1)), with any such injunction to remain in place only until the "material violation has been corrected and remedied" (*id*. at subd. (a)(2)). Second, the summary judgment evidence establishes that Citi offered the Khuranas another opportunity for a loan modification in 2018 and that the Khuranas rejected that offer, failing to submit an application or any documents required to support such an application. These facts demonstrate that Citi corrected alleged violations pertaining to the December 2016 application. Under section 2024.12, subdivision (c), a loan servicer "shall not be liable for any

_____

[2] Citi makes the additional argument that the Khuranas were not " 'borrowers' " within the meaning of the HBOR when they requested a loan modification in December 2016 because, by that time, they had surrendered the property in their Chapter 13 bankruptcy case. (Citing § 2920.5, subd. (c)(2).) We offer no opinion about this theory, which the trial court rejected.

violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale." Thus, there is no triable issue regarding Citi's nonliability for the alleged HBOR violations.

In their opening brief, the Khuranas contend that Citi's offer to consider another loan modification does not constitute a remedial measure within the meaning of section 2924.12, subdivision (c) because that offer was made almost two years after the notice of trustee's sale was recorded in November 2016. We reject this argument, which is based on a misreading of the HBOR's safe harbor provision; to avoid liability, the loan servicer must remedy and correct the alleged violation before "the trustee's deed upon sale" is recorded (§ 2924.12, subd. (c)), not before the notice of sale is recorded.

In their reply brief, the Khuranas abandon their erroneous construction of section 2924.12 and argue instead that there is a triable issue of fact as to whether the safe harbor provision applies. According to this argument, evidence that Citi offered to conduct another review is insufficient proof that Citi actually remedied harm caused by HBOR violations that allegedly occurred two years earlier. The Khuranas forfeited this new argument, which was not raised in the trial court or in their opening brief on appeal. (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111–112, fn. 2 [" ' " 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before' " ' "]; *Canales v. Wells Fargo Bank, N.A.* (2018) 23 Cal.App.5th 1262, 1270, fn. 11 [issue that was "not raised in the opening brief nor before the trial court" was "waived and forfeited"].)

Even on its merits, the Khuranas' forfeited argument fails to persuade. According to this new theory, "if" the Khuranas' financial situation diminished after the alleged HBOR violations, and that change in

12

circumstance can be attributed to the fact that Citi failed to conduct a review in 2016, then the offer of a review in 2018 would not remedy the harm caused by the HBOR violations alleged in the complaint. The Khuranas cite no evidence in the record to create a triable issue of fact as to this speculative theory. Nor do they cite legal authority for their claim that a change in their financial situation could vitiate the HBOR's safe harbor provision. Because a foreclosure sale never took place, the Khuranas' only potential remedy under the HBOR is an injunction of limited duration, for the time required to correct the violation(s). (§ 2924.12, subd (a)(2).) The only violations alleged are that Blume mishandled the 2016 loan modification application. Undisputed evidence establishes that Citi remedied the alleged violations by offering the Khuranas another opportunity to submit a loan modification application in 2018.

## B. Negligence Per Se

The Khuranas allege that Citi committed negligence per se by violating the HBOR and a RESPA regulation. The grant of summary judgment as to these claims is based on three findings: (1) Citi did not owe the Khuranas a duty of care, (2) Citi is not liable for violating the HBOR, and (3) 12 C.F.R. part 1240.40 does not give rise to a private right of action. The Khuranas challenge these rulings but to no avail.

A duty of care and breach of that duty are essential elements of a claim for negligence. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62 ["To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries"].) As a general rule, " 'a financial institution owes no duty of care to a borrower when the institution's involvement in the loan

13

transaction does not exceed the scope of its conventional role as a mere lender of money.' " (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 740.) When the trial court granted summary judgment in this case, there was a split of authority as to whether this general rule extends to a bank's evaluation of a loan modification application. (See *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 915, 919 (*Sheen*).) While the present appeal was pending, our Supreme Court resolved this disagreement by holding that "when a borrower requests a loan modification, a lender owes no tort duty sounding in general negligence principles to 'process, review and respond carefully and completely to' the borrower's application." (*Sheen*, at p. 948.) Thus, the trial court did not err by rejecting the Khuranas' argument that Citi owed them a common law duty of care.

In their complaint, the Khuranas predicated their negligence claims on alleged statutory duties, invoking the doctrine of negligence per se. " 'Under the doctrine of negligence per se, the plaintiff "borrows" statutes to prove duty of care and standard of care.' " (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 584.) The *Sheen* court found that neither the HBOR nor any other federal statute or regulation imposes a general duty of care on lenders with respect to the processing of a loan modification application. (*Sheen, supra*, 12 Cal.5th at p. 921.) However, the court also made a point of the fact that the borrower in *Sheen* had not alleged that his lender violated any specific provision of the HBOR, or any other statute or regulation. (*Sheen*, at p. 921.) Arguably, *Shee*n does not foreclose the Khuranas from invoking the doctrine of negligence per se to establish that Citi had a duty of care to provide a competent and qualified single point of contact to process their loan application. However, the negligence per se doctrine does not relieve a plaintiff of establishing the other elements of a claim for negligence.

14

(*David,* at p. 584.)  In this case, the trial court found that any HBOR violation resulting from Blume's processing of the 2016 loan modification application (1) was not material and (2) did not give rise to liability because (3) the alleged violations were corrected and remedied in 2018.  As discussed, these findings are supported by undisputed evidence produced during the summary judgment proceedings.  Thus, summary judgment was properly granted as to the negligence per se cause of action that is premised on an alleged HBOR violation.

The trial court also provided a valid reason for granting summary judgment as to the negligence per se claim premised on an alleged RESPA violation.  The Khuranas rely only and specifically on 12 C.F.R. part 1024.40, which requires a loan servicer to maintain policies and procedures affording continuity of contact with a delinquent borrower in order to ensure that the borrower receives accurate information about available loss mitigation options.  The Khuranas cannot borrow this regulation to prove that Citi owed them a duty of care because, as the trial court found, section 1024.40 does not create a private right of action.  (*Moody, supra*, 2018 U.S.Dist. Lexis 55322, \*26–\*27 [collecting cases]; see also *Muathe v. Wells Fargo Bank, N.A.* (2020) 807 Fed.Appx. 855, 859–860.)  Beyond that, the factual allegations in the complaint appear wholly unrelated to the RESPA regulation that the Khuranas purport to invoke.  The Khuranas do not allege that Citi failed to maintain proper policies and procedures, but rather that Blume mishandled the specific loan modification application they submitted in December 2016.

### C. The Unfair Competition Law

In their final cause of action, the Khuranas allege that Citi violated Business and Professions Code section 17200, which prohibits "any unlawful, unfair or fraudulent business act or practice . . ."  On appeal, the Khuranas

15

contend there are triable issues as to whether Citi violated the "unlawful" prong of this unfair competition law. However, they also concede that their section 17200 claim is derivative of other causes of action alleging violations of the HBOR and RESPA. We have already explained why those predicate claims fail. For the same reasons, we affirm the summary judgment ruling as to the section 17200 claim.

## II.  Denial of Leave to Amend

The Khuranas seek reversal of the judgment on the independent ground that the trial court abused its discretion by denying them leave to amend their complaint. This claim fails for many reasons.

Code of Civil Procedure section 473 provides that the trial court may "in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading . . ." (Code Civ. Proc., § 473, subd. (a)(1).) Because this broad discretion is conferred on the trial court and not the reviewing court, an order granting or denying leave to amend will not be " ' "disturbed on appeal absent a clear showing of abuse." ' " (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.) Under this standard, " ' "even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record." ' " (*Ibid.*)

In the present case, the Khuranas sought leave to amend their complaint to add two new causes of action, one alleging that Citi violated 12 C.F.R. part 1024.40, and another alleging a tort claim for fraudulent misrepresentation. As discussed, the Khuranas' complaint does not allege facts to prove that Citi violated 12 C.F.R. part 1024.40. When they sought leave to amend, the Khuranas did not propose any additional facts alleging

16

that part 1024.40 was violated in this case.[3] And, in any event, this regulation does not create a private right of action. (*Moody, supra*, 2018 U.S.Dist. Lexis 5532.) Thus, we focus our review on the denial of the Khuranas' request for leave to allege a claim for fraudulent misrepresentation. The trial court gave two reasons for denying leave to amend: (1) permitting the Khuranas to allege a new claim against Citi at such a late stage in the proceeding would have prejudiced Citi, and the Khuranas provided no valid explanation for their delay; and (2) the proposed amendments do not state a new valid cause of action against Citi. Separately or together, these reasons support the denial of leave to amend.

First, "[u]nwarranted delay, without more can be a valid reason for denying a motion to amend." (*Englert v. IVAC Corp.* (1979) 92 Cal.App.3d 178, 190.) In the present case, a lawsuit that the Khuranas filed in order to delay a foreclosure had been pending for almost three years when they sought leave to allege a new cause of action for fraudulent misrepresentation. At the time, discovery was complete, Citi's motion for summary judgment had been fully briefed, and the case was set for trial. Fraud was an entirely new theory of liability and the Khuranas did not meet their burden of explaining why they waited so long to allege it.[4] A "long unexcused delay," as well as the

---

[3] A motion to amend "must" include a copy of the proposed amendment and a statement of allegations that are proposed to be added and/or deleted. (Cal. Rules of Court, rule 3.1324(a).) Although it appears that the Khuranas filed a proposed first amended complaint along with their motion, we do not find that document in the appellate record. We do have a statement of the factual allegations that the Khuranas proposed to add, which was included in their motion papers.

[4] A motion to amend must be supported by a declaration specifying the "effect" of the amendment, why the amendment is "necessary and proper," when "facts giving rise to the amended allegations were discovered," and "reasons why the request for amendment was not made earlier." (Cal. Rules

17

interjection of a new issue requiring further discovery are valid reasons for denying leave to amend. (*Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692; *Rainer v. Community Memorial Hosp.* (1971) 18 Cal.App.3d 240, 258.) Indeed, when a court would have to continue a trial date to avoid prejudicing the opposing party, "refusal of leave to amend cannot be an abuse of discretion." (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 488.)

Second, denial of leave to amend is proper when the record shows that the proposed new cause of action lacks merit. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 652 [collecting cases].) In the present case, the Khuranas proposed to allege that Citi is liable to them for fraud because its employee (Blume) made a false representation that Citi "could and would foreclose" on the Khuranas' property despite the fact that the Khuranas "were in bankruptcy and were, therefore, protected from foreclosure." Citi's opposition to the motion to amend outlined numerous defects in this proposed new cause of action, including that: the factual allegations that the Khuranas proposed to allege are not sufficient to prove all the elements of fraudulent misrepresentation; the proposed cause of action was a sham, as it contradicted allegations in the original complaint acknowledging that the court had granted relief from the automatic bankruptcy stay in the Khuranas' Chapter 13 case; a fraud claim was time barred; and judicially noticeable facts establish that the alleged representation is not false. The trial court credited all of these arguments. It also found that the alleged misrepresentation is an opinion, not an actionable representation of a material fact. (See *Cansino v. Bank of America* (2014)

---

of Court, rule 3.1324(b).) The Khuranas' cursory declaration does not satisfy these requirements.

18

224 Cal.App.4th 1462, 1469–1470 ["Statements or predictions regarding future events are deemed to be mere opinions which are not actionable"].)

In their opening brief, the Khuranas fail to address in any meaningful way the substantive reasons that the court gave for denying them leave to amend. For example, the Khuranas' brief states: "Appellants were denied . . . leave to amend despite new facts to support a new cause of action." This assertion is not supported by any factual or legal argument. We are not "required to consider alleged error where the appellant merely complains of it without pertinent argument." (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.) Points that the Khuranas raise in their brief but fail to support with argument or authority are "deemed to be without foundation," requiring no discussion. (*Ibid.*; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.) The Khuranas also posit that granting their motion would not have caused Citi *any* prejudice, but their own arguments prove otherwise. They concede, for example, that Citi's summary judgment motion could have been "rendered moot" if leave to amend had been granted.

The Khuranas' contend that the trial court "unjustifiably ignored" the policy to liberally permit amendments. "Courts must apply a policy of liberality in permitting amendments at any stage of the proceeding, including during trial, when no prejudice to the opposing party is shown. [Citation.] 'However, " 'even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.' " ' " (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.) Here, the Khuranas failed to provide any valid explanation for the unwarranted delay in asserting a new theory of fraud so late in the proceeding.

19

In their appellants' reply brief, the Khuranas argue the trial court abused its discretion by denying them leave to amend despite what they assert was a proposed cause of action for negligent misrepresentation. The proposed new cause of action, the Khuranas now argue, was ostensibly based on summary judgment evidence establishing that Blume misrepresented "a critical application submission deadline on the eve of a scheduled foreclosure sale." This new argument may not be properly raised in a reply brief. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158.) Further, the Khuranas' trial court motion did *not* propose to add a cause for *negligent* misrepresentation of a deadline; they sought leave to amend to allege a claim for intentional misrepresentation of the right to foreclose. Finally, and in any event, the Khuranas fail to show that they have a valid claim for negligent misrepresentation, thus reinforcing our conclusion that the trial court did not abuse its discretion by denying them leave to amend.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*Khurana v. CitiMortgage, Inc.* (A161003)

20